UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GISPERT BORRERO o/b/o J.L.Q.,

                Plaintiff,

-v-

ANDREW SAUL,
Commissioner of Social Security,[1]

                Defendant.

18-CV-964-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff Gispert Borrero brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) on behalf of her child, J.L.Q., seeking judicial review of the final decision of the Commissioner of Social Security denying J.L.Q. Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Borrero's motion (Dkt. No. 10) is granted, the Commissioner's motion (Dkt. No. 13) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

On April 9, 2014, Borrero filed an SSI application on behalf of her child, J.L.Q., alleging that J.L.Q. has been disabled since March 9, 2014 due to Attention-Deficit

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

- 1 -

Hyperactivity Disorder and a learning disability."[2] (Tr. 204, 214) Born in January of 2004, J.L.Q. was ten-years old at the time her mother filed the disability application on her behalf. (Tr. 19, 214) The application was denied on January 8, 2015 (Tr. 16), after which Borrero requested a hearing before an Administrative Law Judge (Tr. 126-28). On May 11, 2017, Borrero and J.L.Q. appeared with counsel before Administrative Law Judge Melissa Lin Jones (the "ALJ") for a hearing. (Tr. 62-108) On June 28, 2017, the ALJ issued her decision denying J.L.Q.'s SSI claim. (Tr. 10-34) Borrero requested review by the Appeals Council (Tr. 200-01), but on July 6, 2018, the Appeals Council denied Borrero's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). This action followed.

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

---

[2] References to "Tr." are to the administrative record in this case.

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (WDNY 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. §416.924. At step one, the ALJ determines whether the child is engaged

in substantial gainful work activity. *Id.* §416.924(b). If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." *Id.* §416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* §416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* §416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* §416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* §416.924(d).

### III.   *The ALJ's Decision*

The ALJ first found that J.L.Q. was a "school-age child" on the date of the application and an "adolescent" at the time of the hearing decision. (Tr. 19) The ALJ then followed the three-step process for evaluating J.L.Q.'s SSI claim. At the first step, the ALJ found that J.L.Q. has not engaged in substantial gainful activity since April 9, 2014, the date of her SSI application. (Tr. 20) At the second step, the ALJ determined that J.L.Q. has the following severe impairments: Oppositional Defiant Disorder (ODD), mood disorder, learning disability, and Attention-Deficit Hyperactivity Disorder (ADHD). (*Id.*) At the third step, the ALJ found that J.L.Q. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20-21) The ALJ then proceeded to consider whether J.L.Q. has an impairment or combination of impairments that functionally equals the Listings, but concluded that J.L.Q. does not because J.L.Q. does not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning. (Tr. 21-30) As a result, the ALJ held that J.L.Q. has not been disabled within the meaning of the Act since the April 9, 2014 application date. (Tr. 30)

### IV.   *Borrero's Challenge*

Borrero argues that substantial evidence does not support the ALJ's conclusion that J.L.Q. does not have an impairment(s) that functionally equals the Listings. (*See* Dkt. No. 10-1 (Borrero's Memo. of Law)).[3] In particular, Borrero contends that the ALJ

---

[3] Borrero also argues that remand is warranted to determine whether J.L.Q.'s ODD and ADHD satisfy the criteria for Listings §§112.08 and 112.11. The Court need not specifically address this argument because it finds that the case should be remanded on other grounds. On remand, the Commissioner must again follow the three-step process for evaluating J.L.Q.'s claim and will necessarily be required to reevaluate

- 5 -

erred in concluding that J.L.Q. has only less than marked limitation in the domains of acquiring and using information and attending and completing tasks. (*Id.*) Borrero also argues that the ALJ erred in concluding that J.L.Q. has no limitation in the domain of caring for herself. (*Id.*) As set forth below, the Court finds that the ALJ did not set forth substantial evidence in support of her conclusion that J.L.Q. has less than marked limitation in the domains of acquiring and using information and attending and completing tasks. The ALJ also did not set forth substantial evidence for her conclusion that J.L.Q. has no limitation in the domain of caring for herself. Consequently, the Court remands this case for further consideration of J.L.Q.'s limitations.

### A. *Domain of Acquiring and Using Information*

The domain of acquiring and using information considers how well a child acquires or learns information, and how well a child uses the information they have learned. 20 C.F.R. §416.926a(g). The Commissioner has set forth certain "[a]ge group descriptors" to help determine whether school-age or adolescent children are limited in this domain.[4] According to the Commissioner, a school-age child should be able to learn to read, write, do math, and discuss history and science. *Id.* §416.926a(g)(2)(iv). The child should be capable of using these skills in academic situations to demonstrate what they have learned, for example, by reading about various subjects and producing oral and written projects; solving mathematical problems; taking achievement tests; doing group work, and entering into class discussions. *Id.* The child should be capable of using these skills in daily living situations both at home and in the community. *Id.* The child should also be

---

whether J.L.Q. has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *See* 20 C.F.R. §§416.924-416.926.

[4] Because J.L.Q. was a school-age child at the time of the application and an adolescent at the time of the hearing decision, the ALJ included age group descriptors for both age categories.

able to use increasingly complex vocabulary and grammar to share information and ideas with individuals or groups, by asking questions and expressing their own ideas, and by understanding and responding to the opinions of others. *Id.* An adolescent should be able to use what she has learned in daily living situations without assistance. *Id.* §416.926a(g)(2)(v). An adolescent should also be able to comprehend and express both simple and complex ideas and use increasingly complex language. *Id.* Some examples of limited functioning that children of different ages could have in this domain include difficulty recalling important things learned in school the day before; difficulty solving mathematics questions or computing arithmetic answers; speaking only in short, simple sentences; and difficulty in explaining what they mean. *Id.* §416.926a(g)(3).

In concluding that J.L.Q. has less than marked limitation in acquiring and using information, the ALJ found that J.L.Q. "demonstrated obvious to serious problems in this domain that significantly improved during the next academic year, which also correspond to the environmental changes put into place with [J.L.Q.'s] IEP and [J.L.Q's] medication changes." (Tr. 25) The ALJ's rationale is flawed because she relied on J.L.Q.'s improvement within a structured setting to determine that J.L.Q. has less than marked limitation in this domain. The Commissioner's regulations dictate that when a claimant is in a structured educational setting, the ALJ must evaluate the effect of that setting on the claimant. 20 C.F.R. §416.924a(b)(5)(E)(iv). Because such a setting "may minimize signs and symptoms of [the claimant's] impairment(s)," the ALJ must "consider [the claimant's] need for a structured setting and the degree of limitation in functioning [he or she has] or would have outside the structured setting." *Id.* Indeed, the ALJ is required to consider whether the claimant "would continue to function at an adequate level without the

structured or supportive setting." *Id.* On October 10, 2016, Aurea Negron, J.L.Q.'s teacher for the 2015-2016 school year, completed a Teacher Questionnaire wherein Negron assessed J.L.Q.'s functioning in the classroom as well as her academic ability. (Tr. 294-301) In the domain of acquiring and using information, Negron noted that J.L.Q. had serious problems in reading and comprehending written materials as well as in expressing ideas in written form. (Tr. 295) Further, Negron found that J.L.Q. had obvious problems in comprehending oral instructions; understanding school content and vocabulary; comprehending and doing math problems; understanding and participating in class discussions; providing organized oral explanations and adequate descriptions; learning new material; recalling and applying previously learned material; and applying problem solving skills in class discussions. (*Id.*) On November 10, 2016, Kristen Lewis, J.L.Q.'s math teacher for the 2016-2017 school year, completed a Teacher Questionnaire. (Tr. 302-09) In the domain of acquiring and using information, Lewis found that J.L.Q. had only slight problems in many of the areas where Negron noted, the year before, that J.L.Q had serious or obvious problems.[5] (Tr. 303) The ALJ attributed J.L.Q.'s improvement between the 2015-2016 and 2016-2017 school years in significant part to "environmental changes" effectuated by J.L.Q.'s IEP.[6] Indeed, an IEP would have provided J.L.Q. with additional structure or support in her academic environment. Here, the ALJ provided no discussion of the additional structure or support provided by the IEP, nor did she evaluate how J.L.Q. would function without that additional structure or

---

[5] In Negron's Teacher Questionnaire, it is indicated that Negron knew J.L.Q. for the entire 2015-2016 school year and that she saw J.L.Q. for the entirety of each school day over the course of the year. (Tr. 294) In Lewis' Teacher Questionnaire, which assessed far less limitations than Negron's, it is indicated that Lewis had known J.L.Q. for only two months and saw her forty minutes per day. (Tr. 302)

[6] An IEP or individualized education plan is a written statement for a child with a disability that includes an explanation of the special education and related services that will be provided to the child in an educational setting. (*See* https://sites.ed.gov/idea/regs/b/d/300.320)

support. Failure to engage in this analysis was legal error which requires remand. *See Bonet ex rel. T.B. v. Colvin*, 1:13-CV-924, 2015 U.S. Dist. LEXIS 19517 (NDNY Feb. 18, 2015) (case remanded for appropriate application of legal standard where ALJ failed to consider the effects of the claimant's highly structured environment on his ability to attend and complete tasks, and made no effort to compare that environment to a non-structured one); *Appleberry v. Comm'r of Soc. Sec.*, 6:18-CV-6207, 2019 U.S. Dist. LEXIS 173807 (WDNY Oct. 7, 2019) (the ALJ's failure to evaluate the claimant's ability to function outside of his structured special education classroom was legal error).

Additionally, the ALJ ignored evidence in the record that J.L.Q.'s ability to acquire and use information had not improved by the start of the 2016-2017 school year. This evidence, which was not acknowledged or discussed by the ALJ, also suggests that J.L.Q. had significant limitations in her ability to acquire and use information. On September 8, 2016, Dr. Julio Arce, school psychologist, completed a Psychoeducational Evaluation of J.L.Q.[7] (Tr. 475-83) The evaluation included the results of numerous behavioral and academic tests. (*Id.*) Dr. Arce found J.L.Q.'s combined English and Spanish verbal cognitive ability to be in the low range. (Tr. 477-78) J.L.Q. was very limited in the ability to use syntactic and semantic cues in comprehending conversations as she read them and had a limited ability to sight read. (*Id.*) Her math skills were in the very low range for her age and she was very limited in spelling skills, passage comprehension ability and quantitative reasoning. (*Id.*) Dr. Arce concluded that J.L.Q., a 7th grader at the time, was significantly behind her peers and had the academic abilities of a 3rd to 4th grader. (Tr. 480) Indeed, Dr. Arce's Psychoeducational Evaluation

---

[7] School psychologists are considered "acceptable medical sources." 20 C.F.R. §416.902.

undermines the ALJ's conclusion that J.L.Q. has only less than marked limitation in her ability to acquire and use information, and the ALJ should have thus accounted for Dr. Arce's assessment in her decision. While the ALJ is not required to reconcile every shred of evidence, the ALJ must "acknowledge relevant evidence and explain [her] rejection of such evidence." *Walker ex rel. J.B. v. Astrue*, 1:06-CV-1180, 2010 U.S. Dist. LEXIS 54719 (NDNY June 3, 2010). *See also Garcia v. Colvin*, 12-CV-5886, 2015 U.S. Dist. LEXIS 161312, *27-28 (SDNY Dec. 1, 2015) ("The ALJ must not ignore contrary evidence.")

Because the ALJ failed to account for J.L.Q.'s ability to acquire and use information outside a structured or supportive setting and failed to consider Dr. Arce's Psychoeducational Evaluation, substantial evidence does not support the ALJ's conclusion that J.L.Q. has less than marked limitation in the domain of acquiring and using information. The Commissioner shall account for these factors on remand.

### B. *Domain of Attending and Completing Tasks*

The domain of attending and completing tasks considers how well a child is able to focus and maintain concentration, and how well a child can filter out distractions in order to begin, carry through, and finish activities or a task. 20 C.F.R. §416.926a(h). According to the Commissioner, a school-age child should be able to focus their attention in a variety of situations to follow directions, remember and organize school material, and complete classroom and homework assignments. *Id.* §416.926a(h)(2)(iv). A school-age child should be able to concentrate on details, change activity or routine without distracting themselves or others, and stay on task and in place when appropriate. *Id.* An adolescent should be able to pay attention to increasingly longer presentations and

discussions, maintain their concentration while reading textbooks, and independently plan and complete long-range academic projects. *Id.* §416.926a(h)(2)(iv). An adolescent should also be able to organize materials and to plan their time in order to complete school tasks and assignments. *Id.* In anticipation of entering the workplace, an adolescent should be able to maintain their attention on a task for extended periods of time, and not be unduly distracted by their peers or unduly distracting to them in a school or work setting. *Id.* Some examples of limited functioning that children of different ages could have in this domain include being slow to focus or unable to concentrate on activities of interest; repeatedly becoming sidetracked or frequently interrupting others; being easily frustrated and giving up on tasks; and requiring extra supervision to remain engaged in an activity. *Id.* §416.926a(h)(3)(i)-(v).

Here, the ALJ found that while J.L.Q. "displayed difficulty maintaining attention and concentration at multiple points throughout the period at issue, [J.L.Q.'s] ability to maintain attention and concentration improved to no more than an obvious problem on a weekly basis." (Tr. 26) In reaching this conclusion, the ALJ appears to have relied on Lewis' November 10, 2016 Teacher Questionnaire. (*Id.*) However, the ALJ failed to account for other evidence in the record suggesting J.L.Q. continued to have significant difficulties maintaining concentration and attention after November 2016. In January of 2017, J.L.Q.'s treating therapist, Andrea Carolina Florez Marino, noted that J.L.Q. was cooperating less at home and not following instruction as well as she had previously. (Tr. 513) She noted that J.L.Q. was inattentive, unfocused and had recently been disruptive in class. (*Id.*) School discipline reports from December 2016 indicate that J.L.Q was disruptive in class and would not stop throwing paper balls across the room. (Tr. 314-15)

Discipline reports from January 2017 state that J.L.Q. would not sit down or stop talking during a math lesson and would not follow directions or sit in her assigned seat. (*Id.*) Discipline reports from March of 2017 indicate that J.L.Q. engaged in constant conversation that disrupted the class, would not remain in homeroom, and was walking in and out of the classroom and running down the stairs. (Tr. 312) In relying exclusively on Lewis' Teacher Questionnaire, the ALJ failed to account for evidence contained in other academic and medical reports. An "ALJ must consider the entire record…and cannot simply pick and choose from the transcript only such evidence as supports her or his determination, without affording consideration to evidence supporting a plaintiff-claimant's claim." *Leonard v. Colvin*, 7:15-cv-00125, 2016 U.S. Dist. 40236, *48-49 (NDNY Mar. 2, 2016). Consequently, substantial evidence does not support the ALJ's conclusion that J.L.Q. has less than marked limitation in the domain of attending and completing tasks. On remand, the Commissioner shall consider all evidence of limitation in this domain.

### C. *Domain of Caring for Yourself*

The domain of caring for yourself considers how well a child maintains a healthy emotional and physical state, including how well she satisfies her physical and emotional wants and needs, copes with stress and changes in her environment, and takes care of her own health, possessions, and living area. 20 C.F.R. §416.926a(k). The Commissioner's regulations provide that a school-age child should be independent in most day-to-day activities such as dressing or bathing and should be able to recognize circumstances when she feels good about herself and when she feels bad. *Id.* §416.926a(k)(2)(iv). A school-age child should also begin to develop an understanding

of what is right or wrong and what is acceptable or unacceptable behavior. *Id.* A school-age child should begin to demonstrate consistent control over her behavior, and should be able to avoid behaviors that are otherwise unsafe or not good for her. *Id.* An adolescent should be increasingly independent in all of her day-to-day activities. *Id.* §416.926a(k)(2)(v). An adolescent should also begin to develop appropriate ways to express her feelings, both good and bad, and should take medications as prescribed. *Id.* Some examples of limited functioning that children of different ages could have in this domain include not dressing or bathing appropriately, engaging in self-injurious behavior (e.g. suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignoring safety rules; not spontaneously pursuing enjoyable activities or interests; and having disturbance in eating or sleeping patterns. *Id.* §416.926a(k)(3)(i)-(vi).

In finding that J.L.Q. has no limitation in the ability to care for herself, the A.L.J. relied on Borrero's testimony that J.L.Q. "required some reminders about personal hygiene, which is arguably age appropriate". (Tr. 29) The ALJ also generally refers to "other evidence indicat[ing] that the child has no limitations in this domain." Contrary to the ALJ's finding, the record contains evidence that J.L.Q. was limited in the domain of caring for herself, specifically with respect to controlling her behavior, finding appropriate ways to express her feelings, recognizing the difference between acceptable and unacceptable behavior, and avoiding unsafe behavior. The record also reflects that J.L.Q. engaged in self-injurious behavior and refused to take her medication. For example, during a Comprehensive Risk Assessment at Child and Adolescent Treatment Services on November 24, 2015, J.L.Q. reported that she had been thinking about taking her own life. (Tr. 492) J.L.Q. also indicted that she would hit her head against a wall and

had scratched her hand with a knife to scare her mother. (Tr. 493-94) Florez Marino noted that J.L.Q. had a history of self-harm by scratching her face and arms. (Tr. 502) Between December 16 and December 23, 2015, J.L.Q. was admitted for inpatient psychiatric treatment at Brylin Hospital as a result of increased aggressive and violent behavior, impulsivity, and threats of harm to herself and others. (Tr. 371-75, 448-51) Prior to the hospitalization, J.L.Q. was violent towards her mother, aggressive with her brother, threatened suicide and destroyed property at home. (Tr. 448) Borrero testified that J.L.Q. has broken things in her room, punched holes in walls, kicked doors, and threatened to kill herself and Borrero. (Tr. 73-74) Borrero also testified that J.L.Q. is not always compliant in taking her psychotropic medication and that J.L.Q. cries, gets frustrated easily and has difficulty controlling herself. (Tr. 73, 75, 83, 95-96, 101) J.L.Q. testified that she has difficulty controlling her behavior and does not understand why she does certain things. (Tr. 95-96) In her Teacher Questionnaire, Negron indicated that J.L.Q. has a very serious problem handling frustration appropriately, curses frequently, cries, becomes physical or wants to fight when upset and is difficult to "de-escalate." (Tr. 299) Negron also noted that J.L.Q.'s mental condition is not stable, that she often finds scraps of papers where J.L.Q. writes that she "want[s] to die" and that J.L.Q. "likes to throw things around the room or break things when upset." (Tr. 300) Indeed, the ALJ made no effort to reconcile this evidence with her finding that J.L.Q. has no limitation in the ability to care for herself. *Navarro v. Comm'r of Soc. Sec.*, 1:16-CV-1190, 2017 U.S. Dist. 167206, *23-29 (NDNY Oct. 10, 2017) (remand required where the ALJ's general discussion of the evidence did not provide the explanation necessary to support his finding that the child had less than marked limitation in the domain of caring for self);

*Benjamin v. Berryhill*, 3:17-cv-158, 2018 U.S. Dist. LEXIS 97114. *36-38 (D. Conn. June 8, 2018) (remand ordered as to the ALJ's finding that the claimant had less than marked impairment in the ability to care for herself because "the ALJ has not considered evidence that [the claimant] has meltdowns or temper tantrums at least once a week, and whether the evidence supports or is insufficient to support a finding that [the claimant] can manage the demands of her environment at an age appropriate level.")  For these reasons, the Court finds that substantial evidence does not support the ALJ's conclusion that J.L.Q. has no limitation in the domain of caring for herself.  On remand, the Commissioner shall reassess J.L.Q.'s functioning in this domain in light of the evidence described above.[8]

## CONCLUSION

For the foregoing reasons, Borrero's motion for judgment on the pleadings (Dkt. No. 10) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   May 13, 2020
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge

---

[8] Borrero also argues that remand is required because the ALJ erred in finding that J.L.Q does not have a limitation in the domain of health and physical well-being. On remand, the Commissioner should also reconsider J.L.Q.'s limitations in this domain in light of all the evidence discussed herein and specifically with regard to the evidence in the record of J.L.Q.'s mental health treatment. (Tr. 371-79, 381-94, 448, 449-51, 492-515)  Borrero does not argue that the ALJ erred in her assessment of J.L.Q's limitations in the domains of interacting and relating with others and moving about and manipulating objects. The Court finds substantial evidence in the record that J.L.Q. has less than marked limitation in interacting or relating with others and no limitation in moving about and manipulating objects.